**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000059
19-JAN-2016
09:24 AM**

NO. CAAP-15-0000059

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

In the Interest of
K. P.
Born November 18, 2004

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-S NO. 14-00818)

SUMMARY DISPOSITION ORDER
(By:  Reifurth and Ginoza, JJ., with
Leonard, Presiding Judge, concurring separately)

In this joint appeal, Mother-Appellant (Mother) and Father-Appellant (Father) appeal from the "Order Affirming Jurisdiction and Amending the Order File Stamped September 15, [sic] 2014,"[1] filed on January 12, 2015[2] in the Family Court of the Fifth Circuit (Family Court).[3]

On appeal, Mother and Father contend that the Family Court's decision to exercise jurisdiction and impose family supervision pursuant to Hawaii Revised Statutes (HRS) §§ 571-

---

[1]  The pertinent order being amended was actually file stamped September 18, 2014.

[2]  In their Joint Notice Of Appeal, Mother and Father also indicate that they appeal from the "Order Denying Mother's Second Non-Hearing Motion for the Court to Reconsider its Decision at the Conclusion of the Return Hearing on September 3, 2014," entered January 22, 2015.  However, Mother and Father present no substantive argument regarding the order.

[3]  The Honorable Edmund D. Acoba presided.

11(9) and 587A-5 (Supp. 2015)[4] exceeded the bounds of reason due to the lack of evidence of harm or threatened harm to K.P. pursuant to HRS § 587A-4 (Supp. 2015).[5] Mother and Father contend that any threatened harm in this case does not reach the

---

[4] HRS § 571-11(9) provides in pertinent part:

> **§571-11 Jurisdiction; children.** Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings:
>
> . . . .
>
> (9) For the protection of any child under chapter 587A[.]

HRS § 587A-5 provides:

> **§587A-5 Jurisdiction.** Pursuant to section 571-11(9), the court shall have exclusive original jurisdiction:
>
> (1)    In a child protective proceeding concerning any child who is or was found within the State at the time specified facts and circumstances occurred, are discovered, or are reported to the department. These facts and circumstances constitute the basis for the court's finding that the child's physical or psychological health or welfare is subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of the child's family; and
> (2)    In any prior child protective proceeding under chapter 587, the former Child Protective Act.

[5] HRS § 587A-4 provides in pertinent part:

> "Harm" means damage or injury to a child's physical or psychological health or welfare, where:
>
> (1)  The child exhibits evidence of injury, including, but not limited to:
>
> > . . . .
> >
> > (H)  Extreme mental distress;
> >
> > . . . .
> >
> > and the injury is not justifiably explained, or the history given concerning the condition or death is not consistent with the degree or type of the condition or death, or there is evidence that the condition or death may not be the result of an accident;
>
> . . . .
>
> "Threatened harm" means any reasonably foreseeable substantial risk of harm to a child.

level of a threat of extreme mental distress.[6]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve the appellants' point of error as follows and affirm the Family Court.

The Family Court concluded that it had jurisdiction because K.P.'s physical or psychological health or welfare was subject to imminent harm, harm, or threatened harm by the acts or omissions of her family and also that K.P. was subject to a threat of harm of extreme mental distress due to the high level of conflict in the family home and prior history. The Family Court also concluded that there was a threat of extreme mental distress based on unresolved substance abuse issues, altercations between Father and Mother's boyfriend that caused stress for K.P., and Mother's stress from the situation was being transferred to K.P.

The Family Court concluded that there were unresolved domestic violence issues apparently based upon K.P. witnessing one or more arguments or altercations between Father and Mother's boyfriend. One altercation between Father and Mother's boyfriend occurred while K.P. was present. Another altercation between Father and Mother's boyfriend, although unclear whether K.P. witnessed it, resulted in Father being incarcerated. Also, it appears that Father was arrested once, approximately four years before the petition in this case was filed, for family abuse of K.P., and Mother testified in this case that Father had previously been violent with Mother. Therefore, Father's argument that there was no evidence that he personally caused harm or threatened harm is without merit. In terms of substance abuse issues, it is undisputed that after DHS received a notice of concern regarding Mother and her boyfriend which in part

---

[6] Mother and Father argue that the Guardian Ad Litem used an incorrect standard of proof in closing arguments. Any incorrect argument by the Guardian Ad Litem regarding the standard of proof necessary to impose family supervision was harmless because the Family Court did not adopt the Guardian Ad Litem's standard of proof.

alleged drug use, Mother and Mother's boyfriend were court ordered to take a urinalysis test and both tested positive for marijuana, Mother admitted to having "a little hit here and there, just so I can go to sleep[,]" and that, while Mother used to have a prescription to use marijuana, she does not currently. And while Mother denies that her boyfriend is a methamphetamine user, boyfriend, whom Mother lives with, did test positive for methamphetamine after taking the court ordered urinalysis test. The record reflects unresolved substance abuse issues involving Mother and her boyfriend.

In large part, Mother and Father request that this court reevaluate the evidence presented to the Family Court. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation and quotation marks omitted). The Family Court did not abuse its discretion in concluding that K.P.'s physical or psychological health or welfare was subject to threatened harm by the acts or omissions of her family and that K.P. was subject to a threat of harm of extreme mental distress due to the high level of conflict in the family home and prior history.

The Family Court also did not err by considering a supplemental safe family home report, dated June 5, 2014, which also involved K.P.'s sibling. Mother and Father concede that "when this was objected to by counsel, the lower court indicated that it would filter out any information relating to [sibling], . . . " Absent evidence to the contrary, we presume that a judge sitting as the trier of fact will rely only on competent evidence. See In re Doe, 79 Hawaiʻi 265, 275, 900 P.2d 1332, 1342 (App. 1995). In any event, the Family Court imposed family supervision, which means the "legal status in which a child's legal custodian is willing and able, with the assistance of a service plan, to provide the child with a safe family home." HRS § 587A-4. Thus, the Family Court concluded that Mother and Father could provide a safe family home with the assistance of a service plan. In making that determination, the Family Court was

required to consider the safe family home factors in HRS § 587A-7 (Supp. 2015). One factor that must be considered is "[s]ervices provided to the child and family[.]" HRS § 587A-7(1)(H). Thus, the Family Court did not abuse its discretion merely from the fact it considered the supplemental safe family home report and the services provided to K.P.'s sibling which were extensively described in the supplemental safe family home report.[7]

Therefore, IT IS HEREBY ORDERED that the "Order Affirming Jurisdiction and Amending the Order File Stamped September 15, [sic] 2014," filed on January 12, 2015 in the Family Court of the Fifth Circuit is affirmed.

DATED: Honolulu, Hawai'i, January 19, 2016.

On the briefs:

Kai Lawrence,
for Mother-Appellant.

Warren Perry,
for Father-Appellant.

Russell K. Goo,
Mary Anne Magnier,
Jay K. Goss,
Deputy Attorney General,
Department of the Attorney
General, State of Hawai'i,
for Appellee.

Associate Judge

Associate Judge

---

[7] Mother and Father contend that their constitutional right to due process was violated because the Family Court considered the supplement safe family home report. Mother and Father cite no legal authority to support their claims, and also fail to provide any citation to constitutional provisions, state or federal, under which they assert their rights have been violated, as required by Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) and (8). Failure to comply with HRAP Rule 28 constitutes waiver of the arguments. HRAP Rule 28(b)(4) and (7).

We reject Mother and Father's contention that, because they assert that a constitutional right has been violated, we review the entire case, including the Family Court's weighing of evidence, *de novo*. It is only the constitutional questions, if properly presented and not waived, that are reviewed *de novo*. See In re Guardianship of Carlsmith, 113 Hawai'i 236, 239, 151 P.3d 717, 720 (2007) ("This court reviews questions of constitutional law *de novo*[.]")

## CONCURRING OPINION BY LEONARD, J.

I concur in the majority's opinion. I write separately to clarify the basis for my agreement to affirm the Family Court's exercise of jurisdiction over K.P. pursuant to Hawaii Revised Statutes chapter 587A. The Family Court stated its decision as follows:

> After reviewing the -- my notes, recalling the evidence in this case, the testimony that was presented, arguments made by counsel, by the Deputy Attorney General, here's my findings.
>
> I find there is an adequate basis to involve family -- to invoke Family Court jurisdiction over the child and her parents in this case. Jurisdiction in this case is based on threatened harm to the child, and it's based on the following.
>
> One, there's -- I agree with the guardian ad litem, there is unresolved substance abuse issue that needs to be addressed.
>
> Also, the child witnessing physical altercation between [Mother's boyfriend] and [Father]. So the child has experienced or has witnessed violent behavior that's has gone on in the home and also between [Mother's boyfriend] and [Father].
>
> What was obvious during this whole hearing, and I could feel it through [Mother] and her testimony, is the amount of stress that all of this is causing [K.P.]. As [Mother's] testimony was one that for a long time it's been [K.P.] and you. And [Mother's boyfriend] came into the picture and [K.P.] wanted more time with you. That, to me, this Court, seems to have caused some stress on her.
>
> Then the altercation between [Mother's boyfriend] and [Father], that seems to have caused some stress on [K.P.].
>
> So when we talk about harm, as [Mother's attorney] argued, this Court, in looking at you, [Mother], and the stress you're going through because of all of this, it seems as though that stress is now being transferred to [K.P.], and that's why I feel the threatened harm in this case is the threat of extreme mental distress on her because of the situation.
>
> And based on that, that's why this Court feels that jurisdiction -- this Court needs to take jurisdiction over this case.

The Family Court's reference to an unresolved substance abuse issue appears to include: (1) Mother's admitted use of marijuana; (2) Mother's live-in boyfriend's admitted use of

marijuana and denied but presumptive use of methamphetamine, which was based on a drug screening test that was not subjected to laboratory confirmation; and (3) it appears, Father's history of methamphetamine use.

Mother testified that, in the past, she had a medical marijuana certificate related to her ovarian cancer, she did not currently hold a medical marijuana certificate, but that she had self-medicated for migraines, outside of the home, and outside of K.P.'s presence, after K.P. went to bed. There is no testimony or other evidence that Mother ever used marijuana in K.P.'s presence, was impaired by marijuana when transporting or caring for K.P., or that K.P. was at all aware of Mother's use of marijuana. The evidence in the record concerning Mother's marijuana use does not, by itself, constitute a threat of harm to K.P. sufficient to support the imposition of family supervision. Although Mother's boyfriend's positive test for methamphetamine appears to have been a screening test of limited reliability, the boyfriend's explanation, that it was secondhand smoke from his contact with other methamphetamine users, is not entirely reassuring. Although K.P. was not currently living with Father, regular visitation with Father was anticipated, and his history of methamphetamine use was relevant to the Family Court's determination.

As the majority states, and the Family Court found, K.P.'s family had a history of altercation and domestic violence issues. Prior to Mother and Father's divorce, in 2010, Father had been arrested for Family Abuse of K.P. There were also unconfirmed reports of abuse directed at Mother and K.P.'s brother. It appears, however, that subsequent to that time, Father had engaged in services and DHS had assessed Father to be an adequate caretaker for K.P. Nevertheless, there was a high level of unresolved conflict between Father and Mother's boyfriend, which had manifested itself in both verbal and physical altercations, including at least one physical altercation that K.P. witnessed. The record reflects that Father

2

had been incarcerated as a result of a violent episode involving Mother's boyfriend. The Family Court properly found that the altercations between Father and Mother's boyfriend seemed to cause stress to K.P. and contributed to a threat of harm of extreme mental distress.

Some of the Family Court's other observations would not support the State's exercise of jurisdiction over this family, absent the aforementioned factors. For example, the court's observation concerning Mother's boyfriend coming into the picture and K.P. wanting more time with Mother is not tantamount to neglect or threat of neglect warranting family supervision. For better or worse, this is a common phenomenon in many family situations and is not grounds for State intervention. Likewise, Mother's experience of stress related to DHS's involvement and the court proceedings, and K.P.'s resulting experience of stress that was perceived by the court, is likely to exist to some degree or another in nearly every case and, absent extraordinary circumstances, does not itself constitute a basis for the exercise of jurisdiction over a family.[1]

Nevertheless, as has been often stated by the appellate courts in this jurisdiction, the Family Court possesses wide discretion and "is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citations omitted).

---

[1] As the majority states, this court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence. Thus, I will merely note, for example, the apparent contradiction of DHS's assessment of Father as an adequate caretaker and criticism of Mother for allowing K.P. to live with Father at times, which appears also to be consistent with the terms of their divorce. The social worker's rationale was that, because Mother had previously asserted that Father was a "horrible" parent, Mother's allowing K.P. to live with him unsupervised for a period of time demonstrated bad parenting on her part. Thus, it seems that the social worker expected Mother, inter alia, to apply a higher standard of protectiveness than DHS. It is, however, the province of the Family Court to evaluate the witnesses and evidence presented, including the reasonableness of the State's concerns and expectations.

3

For these reasons, I agree with the majority's determination that the Family Court's January 12, 2015 Order Affirming Jurisdiction should be affirmed.